FILED ___ LODGED
RECEIVED ___ COPY

JUN 0 7 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Anita Smith-Harris
945 N. Pasadena, Unit 110
Mesa, Arizona 85201
Phone: 480-773-4615
Email: harrisfamilyhoops@gmail.com

Plaintiff Pro Se

## IN THE UNITED STATES DISTRICT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anita Smith-Harris,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>Mesa Unified School District #04 of Maricopa County; Mesa Unified School District #04 Governing Board,<br><br>　　　　　　　　Defendants. | Case No.　CV-22-989-PHX-DJH<br><br><br>**COMPLAINT** |

Plaintiff Anita Smith-Harris, by and through her attorneys, hereby brings this action against Defendants Mesa Unified School District #04 of Maricopa County and Mesa Unified School District #04 Governing Board (Defendants), on behalf of herself.

While working Defendants' Westwood High School, Anita suffered discrimination and harassment, including being subjected to a hostile work environment, based on

1. her race in violation of Title VII of the Civil Rights Act,

2. her age in violation of the Age Discrimination in Employment Act (ADEA), and

3. her disability in violation of the Americans with Disabilities Act (ADA).

Anita—a 63-year-old African American woman—was subjected to disparate treatment when Defendant took Anita's classroom and gave it to a white teacher, needlessly moved Anita's

students to an auditorium that made it nearly impossible for them to learn, allowed a white teacher with the same remote and virtual teaching structure to have an in-classroom assistant and speech pathologist while not affording Anita the same help, and imposed impossible to meet deadlines on Anita while being lax with white teachers on the same deadlines.

After she complained about discrimination, Anita was subjected to retaliation in violation of Title VII, the ADEA, and the ADA through unjustified reprimand that were designed to set up Anita for failure and which favored young, white teachers. Anita was diagnosed with PTSD, depression, and anxiety caused by the District's actions and was prescribed with accommodations, which the District did not follow. Anita was also diagnosed with a physical impairment of her bladder and required accommodations, but the District denied these as well.

### Plaintiff's Claims.

1. 29 U.S.C. § 623(a)(1) – The District discriminated against Anita based on age in violation of the Age Discrimination in Employment Act.

2. 42 U.S.C. §§ 12101 to 12213, and 12112(a) and (b)(5)(A) - The District failed to provide a reasonable accommodation to Anita in violation of the Americans with Disabilities Act.

3. 42 U.S.C. § 2000e-2(a)(1) – The District discriminated against Anita based on race in violation of Title VII of the Civil Rights Act and retaliated against Anita when she complained about race discrimination, by creating a hostile working environment and subjecting her to adverse employment actions.

4. 29 U.S.C. § 623(d) – The District retaliated against Anita based on age and retaliated against her, in violation of the ADEA, when she complained about race discrimination, by creating a hostile working environment and subjecting her to adverse employment actions.

5. 42 U.S.C. § 2000e-3(a) – The District retaliated against Anita in violation of Title VII when she complained about race discrimination, by creating a hostile working environment and subjecting her to adverse employment actions.

**The Parties, Jurisdiction, and Venue.**

6. Anita Smith-Harris is a certified teacher at Mesa Unified School District #04 ("the District"). She has been in this position at all times relevant hereto.

7. Anita, is and has been at all relevant times, a resident of the State of Arizona, in the County of Maricopa.

8. Anita is a 63-year-old African American woman, born in the United States of America, with a disability.

9. Anita is employed by Defendant in Maricopa County, Arizona.

10. Defendant Mesa Unified School District #04 of Maricopa County ("Defendant") is a political subdivision of the State of Arizona and is organized for the purpose of administration, support, and maintenance of public schools in the County of Maricopa. It may be sued pursuant to A.R.S. §§ 15-101(23), 15-441, et seq., and 12-821.01.

11. Defendant Mesa Unified School District #04 Governing Board ("the Governing Board" or "Defendant") is a body organized for the government and management of schools within the Mesa Unified School District #04 in the County of Maricopa, State of Arizona, and as such, may be sued pursuant to A.R.S. §§ 15-101(14), 15-321 through 350, and 12-821.01, and A.R.S. § 15-326 in particular.

12. Where "Defendant" is referenced, both Defendants are intended.

13. All acts complained of took place in Maricopa County, Arizona, and Defendant employed Anita in Maricopa County, Arizona.

14. This Court has subject matter jurisdiction over the claims alleged in this Complaint.

15. Jurisdiction in this case is based on a federal question under 28 USC § 1331.

16. Based upon the foregoing, the United States District Court for the District of Arizona, Phoenix Division, is the appropriate venue for this action pursuant to 28 USC § 1391(b).

17. Plaintiff filed a Charge of Discrimination with the EEOC on December 24, 2021 on all claims mentioned herein (Charge No. 540-2021-03781), and received a Notice of Right to Sue Letter on March 9, 2022.

18. All conditions precedent to filing this lawsuit have been met.

**Facts.**

19. Anita incorporates and restates the allegations in this Complaint.

20. Anita has been a special education English teacher at Westwood High School for over 17 years.

21. Before the year 2020, she taught in the traditional classroom setting.

22. But amid the Covid-19 pandemic, Anita began working from home in July 2020 because both she and her young daughter were high-risk to suffering complications from Covid-19.

23. She was given a hybrid teaching structure where, in the same class session, she taught students who remained home and students who were on campus tuning into her lessons online.

24. She was the only black teacher at Westwood High School's Special Education Department, except for one teacher who, to the best of Anita's knowledge, taught on campus and did not teach remotely like Anita did and except for two black teachers at Westwood in the general education department who were held to different standards.

25. Westwood High School only recently hired a black speech pathologist who works with students with disabilities, but that person was hired shortly before Anita left for long term disability.

26. Traditionally, Anita taught 11th and 12th graders.

27. Starting in Summer 2020, Principal Chris Gilmore (white male in his 40s) and Department Chair Wendy Clifford (white female in her 40s) at Westwood High School began discriminating against Anita compared to her white counterparts in the following ways:

    a.  From July 2020 to December 2020, Anita's white coworker, Susan Johnston, was allowed to teach from home, but Johnson was allowed to have an instructional specialist (an assistant) and a speech pathologist in her classroom to assist her students in person. Anita was not allowed the same.

    b.  Without any warning, Anita's students were moved from her usual classroom that Mills was given to an auditorium. This move caused tremendous interruption in lessons by noise from choir or band practice in the vicinity occurring at the same time. While in the auditorium, students were unsupervised and had no place to charge their computers, so they often had to miss Anita's lessons. This severely impeded their education and Anita's success as their teacher.

    c.  From July 2020 to December 2020, one of Anita's students felt so disrupted and unsupervised in the auditorium that he took refuge in another teacher's--Maureen Cionci's--empty classroom so he could focus on Anita's lessons.

    d.  It is Anita's understanding that Cionci (white) had no more than two students in-person during that class period and no remote students.

e. In the meantime, Anita was set up for failure by being given impossible-to-meet deadlines. For example, in Spring 2021, Clifford required Anita to complete IEP documentation with an unreasonable deadline. This was practically impossible for Anita, who had a full class load each period. Many days, Anita stayed up until 2-3:00 AM finishing grading and completing IEP documentation. By comparison, Cionci admitted to Anita that she was able to finish her IEP documentation very quickly because during some periods, she only had one student to teach.

f. From July 2020 to December 2020, Anita received multiple harassing emails from Clifford and Principal Gilmore.

g. When Anita asked Clifford clarifying questions on important topics, her questions were intercepted by Gilmore saying things like "just do it" without providing clarification.

h. Clifford micromanaged Anita, such as delegating school secretaries to call Anita at home to check up on her and make sure she's working. They did not do this to other teachers.

i. Without any warning, Anita's classroom was passed over to Debbie Mills (white) who had not been at Westwood longer than a year at that point.

j. Clifford interfered with Anita's collaboration with school counselors in charge of scheduling students, which impeded Anita's plans for the students to graduate at a certain pace.

28. Anita first complained to HR on December 16, 2020, about Clifford's and Gilmore's harassing actions towards her. Specifically, Anita complained that it was discriminatory and retaliatory that

   a. Clifford was urging school counselors to disrupt Anita's students' schedules which in turn disrupted students' ability to graduate on time,

   b. Clifford put Anita's students into an auditorium which caused them to need to go to another teacher's classroom,

   c. Clifford and Gilmore gave Anita's classroom to another teacher,

   d. Clifford and Gilmore allowed other teachers who teach remotely to have assistants, and

   e. Administration expecting Anita to complete IEP documentation unreasonably quickly.

29. HR called Anita into a meeting on January 7, 2021. During the meeting, Anita had a back-and-forth discussion with HR about moving classes, about the auditorium issue, and about of the relative number of students that Anita had compared to other teachers such as Cionci. HR focused mostly on the number of students in teachers' classes, trying to convince Anita that her class size was average, and ignored that teachers like Cionci had as little as one student during some class periods.

30. In February 2021, HR concluded that,

   a. management's emails to Anita were not harassing;

   b. the change in Anita's teaching structure was not harassing. Rather, the change was in response to parent demand for such a structure;

   c. Anita's student load and case management load was average; and

    d. Anita's students were out of compliance with IEP standards.

31. HR's investigation was inadequate for the following reasons:

    a. HR did not provide any information on who it interviewed, what documents it used to conduct its investigation other than emails Anita provided, nor what other steps it took to investigate.

    b. HR's claim that Anita's student load was average was untrue. Teachers like Cionci had as little as one student in a class period while Anita had a full class each period.

    c. HR offered no support for its assertion that Anita's students were out of compliance regarding their IEPs except making false statements that Anita was keeping them out of compliance by not attending or being prepared for IEP meetings.

    d. HR offered no explanation why it failed to assess Anita's claims that another teacher was given Anita's classroom, Anita's students were moved into an auditorium, and another teacher was allowed to work remotely with an assistant and speech pathologist.

32. After Anita complained to HR, management discriminated against her, including in retaliation to her complaints by creating a steady paper trail against her, including in the following ways:

    a. Between February and May 2021, in the middle of the school semester, Clifford switched the grade levels of Anita's remaining students, and she was suddenly given students who were in ninth grade from other teachers who didn't want to teach them remotely. Anita had not previously taught ninth or tenth grade

students and had never met these students before. For the ninth and tenth graders, she was not even given a curriculum. At this time, Anita taught ninth through twelve graders in each of her six class periods, which set her and her students up for failure as it became impossible for Anita to juggle that many special education students with IEP plans.

    i.  This did not happen to any other teacher.

b.  On February 10, 2021, around the same time that HR conducted its sham investigation, Principal Gilmore called Anita into a meeting in which he accused her of not attending multiple IEP meetings on time or at all, not being prepared at the IEP meetings, and failing to remain in compliance with her students regarding IEPs. Gilmore claimed he had been warning Anita about this since November 2020. These accusations were false for several reasons, including that

    ii.  Anita had not missed any IEP meeting for her own students.

    iii.  Of her team, only the teacher whose student was being evaluated had to attend the IEP meeting with a general education teacher. Others on the team who taught that student were required only to submit paperwork for the student's IEP but were not required to attend an IEP meeting for that student—they were merely encouraged. By being reprimanded for not attending IEP meetings that were not for her students, Anita was the only teacher punished in this way.

    iv.  Gilmore's referral to a missed IEP meeting in November 2020 was false and misleading. In November 2020 and December 2020, Anita was attending jury duty and Westwood had proper notice of it. So, if any of

her students did have an IEP meeting, she was excused from attending and the meeting was to be handled by other teachers or Clifford.

c. Around the same time that she complained to HR in January 2021, Anita requested to teach summer school through the District's Mesa Distance Learning program during Summer 2021, but her request was denied shortly after in March 2021.

    i. Anita was not given a reason.

    ii. Teaching in this summer program would have allowed Anita the potential to earn between $40-$70 per hour.

    iii. Anita was allowed to teach this summer class in Summer 2020 before she submitted her complaint to HR. By comparison,

    iv. Teacher Beth Buckman (white) was given the opportunity to teach in the summer program in Summer 2020 and part time during the Fall 2021 semester. Buckman had significantly less teaching experience and tenure at Westwood than Anita.

    v. Teacher Carol Helfenbein (white) was also allowed to teach in that program. Helfenbein was allowed to work for the program for five years in the evenings. She also had significantly less experience and tenure than Anita.

    vi. Teacher Susan Sullivan (white) was similarly allowed to teach for several years in the evenings, teaching driver's education courses. She, too, had less experience and tenue than Anita.

vii. Teacher Johnston (white) was allowed to teach after school by teaching a student off campus or teaching courses at a Native American reservation for years. She, too, had less experience and tenure than Anita.

d. On March 4, 2021, Principal Gilmore called Anita into another meeting to discuss a Letter of Reprimand with a corrective action that again accused her of not attending or preparing for IEP meetings. Anita had not previously received this letter.

e. On April 26, 2021, Principal Gilmore issued Anita a second Letter of Reprimand because she had not attended an IEP meeting on April 22, 2021. In the letter, Gilmore claimed this was an ongoing issue with Anita and referenced his conversation with her in February 2021 and the first letter Anita never received. This was an unjustified action for the following reasons:

   i. The only reason Anita missed the IEP meeting was because she received no notice of it from the school.

   ii. When Anita realized that she missed the IEP meeting, she immediately rescheduled with the student's parents and the parents understood. Anita conducted the IEP meeting just several days later without issue and within the deadline of compliance.

   iii. The second letter referenced the first letter, which Anita never received.

   iv. In the letter, Gilmore accused Anita of using foul language on several occasions. This accusation was false. He either cited to rumors as examples or provided no evidence to justify the accusation at all.

     v.  In the letter, Gilmore reprimanded Anita for using short-hand sentences in her emails.

  f.  On May 19, 2021, Anita received an unjustified "developing" performance evaluation for the 2020-2021 school year that Gilmore conducted. Anita was scored as "ineffective" in the category of professionalism and "developing" in the category of maintaining accurate records. This rating was unjustified for the following reasons,

     i.  Anita had still not yet missed any of her IEP meetings, including the one on April 22.

     ii.  The corrective actions in the first and second Letters of Reprimands were still in place.

     iii.  The evaluation was meant to guide a teacher on how to improve her ratings, but the evaluation had no steps for improvement, nor did it provide any time to improve because it was given to her just days before the end of the school year.

     iv.  She was never given a prior warning that such a rating was pending.

     v.  Before Anita complained to HR about discrimination, Anita's ratings were positive.

     vi.  The rating system was unfair as whole. While Anita was scored the second highest score of "effective" in all categories except two, her overall score was "developing."

  g.  Anita's coworker Ryan Cooney (white) was treated significantly more favorably than Anita. For example, Cooney had previously walked off the job and did not

come back to school after spring break. Without Cooney, Anita and other teachers had to complete his IEP meetings that he had not completed before he left. Despite these behavioral issues, Clifford made excuses for him, and he returned to teach at Westwood.

h. Similarly, Anita's other coworker Jeff Eastman (white) continuously failed to complete major tasks like enter final grades for students. Eastman voluntarily left Westwood but was rehired and is now moving up in hierarchy, despite his performance issues. When Eastman returned to Westwood, he boasted and joked to other teachers on not having turned in grades and still being rehired.

33. May 18, 2021, Anita went on long-term disability due to the actions of Defendant.

34. However, Gilmore called Anita into a meeting the day after, on May 19, to present her the "developing" evaluation.

35. Anita's doctor, Dr. Jacqueline Saint Germain, diagnosed Anita with PTSD, depression, and anxiety and attributed Westwood's actions towards Anita as a major contributing factor.

36. Dr. Saint Germain determined that Anita should take leave to get out of the toxic environment. So, Anita did just that.

37. Anita's short-term disability originally lasted until December 2021, at which time she requested long term medical leave to ensure she had more job security.

38. However, in January 2022, her request was denied. She was told it was denied due to "undue hardship" but received no explanation of how it would be undue hardship. Anita went on long term leave.

39. Since May 2021, Anita has not taught at Westwood High School.

40. She continues to exhibit symptoms of PTSD, anxiety, and depression including nightmares and trouble sleeping. She attends regular therapy and takes prescribed medication, so she is learning to cope.

41. On June 7, 2021, Anita attempted to appeal her reprimands to Principal Gilmore, but was denied the option of doing so.

42. Seeing that nothing was done to address her concerns, Anita filed an EEOC Charge of Discrimination on December 24, 2021.

43. Anita currently suffers from a physical disability, including bladder impairment. Due to this disability, Anita requires ADA accommodations prescribed by her doctor, including being physically close to a restroom. Anita is still being evaluated, but her doctor said that should she return to work physically, she would need this accommodation. However, the District denied this accommodations request by telling her that should she return to work, she would have a classroom that did not meet this accommodation.

44. Additionally, Anita's doctor ordered accommodations for her PTSD, depression, and anxiety caused by the District, including

    a.   transfer away from the harassing supervision,

    b.   remote teaching, with help from an assistant or a speech pathologist, or

    c.   remote teaching through the District's Mesa Distance Learning.

45. The District denied these requests for Anita's mental health disability.

46. The District gave Anita until July 29, 2022 to make a decision whether she would be returning to work without any accommodations or face termination.

**Demand for Jury Trial**

47. Plaintiff Anita demands a trial by jury pursuant to the Seventh Amendment of the United States Constitution, and Federal Rules of Procedure 38(a), (b).

**Count I:
Discrimination Based on Age
ADEA, 29 U.S.C. § 623(a)(1)**

48. The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), prohibits employers from harassing, retaliating, and terminating their employees because of age.

49. Anita is a 63-year-old teacher at the District's Westwood High School. Her managers, Principal Chris Gilmore (40s) and Department Chair Wendy Clifford (40s) discriminated against Anita based on her age, including when they did not allow her to teach remote and virtually with the assistance of an assistant or speech pathologist, moved her students from their physical classroom that it gave another teacher to an auditorium that set her and them up for failure, forced her to work a full class load each period while at least one teacher had as little as two students during one class period, enforcing impossible to meet standards about IEPs only on her and being lax with other teachers, telling her "just do it" when she asked questions, micromanaged her, sent her harassing emails, and interfering with her students' schedules that set her up for failure.

50. Defendant's unlawful employment practices were willful within the meaning of the ADEA.

51. Anita seeks a judgment for the following:

    A. Injunctive relief, including enjoining discrimination and implementing policy changes, training, and changing her status to eligible for rehire;

    B. Reinstatement with full accommodations,

C. Back pay, reinstatement with all accommodations in lieu of front pay, or front pay with interest;

D. Liquidated damages;

E. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

F. Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 USC § 1920.

### Count II
### Failure to Provide Reasonable Accommodation, ADA
### 42 U.S.C. §§ 12101, 12213, 12181, and 12112 (b)(5)(A)

52. Anita repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

53. Under 42 U.S.C § 12112(b)(5)(A) discrimination is defined as including making reasonable accommodations.

54. Anita is a qualified individual with a disability.

55. Defendant failed to make reasonable accommodation to the physical limitations of Anita despite doctors' orders.

56. Defendant failed to initiate or engage with Anita to identify the precise limitations resulting from her disabilities and potential accommodations that could overcome those limitations.

57. Anita was diagnosed with PTSD, depression, and anxiety, which her doctor attributed to Defendant's actions towards Anita as a major contributing factor. Her doctor determined

that she should take leave to escape the toxic working environment, which Anita began on May 18, 2021, and still currently on. She continues to exhibit symptoms of PTSD, anxiety, and depression including nightmares and trouble sleeping. Anita requested accommodations for her disability caused by the District, including transfer away from the harassing supervision, remote teaching with help from an assistant or a speech pathologist, or remote teaching through the District's Mesa Distance Learning. The District denied these requests.

58. Anita additionally suffers from bladder impairment, a disability that requires her to have physical accommodation of being near a restroom. The District denied her this request for accommodations by telling her that should she return to work, she would be teaching in a classroom significantly far away from any restrooms.

59. Anita is on long-term medical disability and the District denied her request for long-term medical leave due to "undue hardship" that it refused to provide further explanation about.

60. The District gave Anita until July 29, 2022 to make a decision whether she would be returning to work without any accommodations or face termination.

61. Defendant's actions regarding Anita's physical and mental disabilities is retaliation against Anita for complaining about race discrimination.

62. The unlawful employment practices complained of in the foregoing were and are intentional.

63. As a direct and proximate results of the conduct by conduct of Defendant, Anita is entitled to compensatory damages including for pain, PTSD, suffering, pain, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, and nightmares. Anita also incurred medical expenses. Anita is reasonably likely to incur more compensatory damages in the future.

64. Injunctive relief should be granted for Anita against the Defendant to prevent further acts of retaliation, particularly since the Defendant appears to be oblivious to its duties and liabilities under the ADA.

65. The unlawful employment practices complained of were intentional.

66. The unlawful employment practices complained of were done with malice or with reckless indifference to Anita's federally protected rights.

67. Anita seeks a judgment for the following for the ADA failure to accommodate claim:

A.  Compensatory and general damages in an amount to be determined by the trier-of-fact;

B.  Monetary damages, including lost wages, salary, employment benefits, 401K vesting, stocks, and other compensation, in an amount to be proven at trial;

C.  Reinstatement with all accommodations;

D.  Front pay in lieu of reinstatement with all accommodations;

E.  Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Anita;

F.  Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule Civil Procedure 54(d)(2), and Local Rule Civil Procedure 54.2; and

G.  Her taxable costs incurred herein, pursuant to Federal Rule Civil Procedure 54(d)(1), Local Rule Civil Procedure 54.1, and 28 USC § 1920.

68. Anita seeks a judgment for the following for the ADA retaliation claim: equitable relief specified in 42 USC § 2000e–5(g)(1), including back pay, reinstatement with all accommodations, or front pay in lieu of reinstatement with all accommodations.

**Count III**
**Discrimination Based Upon Race**
**Disparate Treatment and Hostile Work Environment**
**Title VII, 42 U.S.C. § 2000(e)-2(a)(1)**

69. Anita re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

70. Defendant discriminated against and harassed Anita in violation of 42 USC § 2000e-2(a)(1) based on race, including by creating a hostile working environment for her through disparate treatment, in the following ways: allowing a white teacher with the same teaching structure to have an assistant and speech pathologist and not allowing Anita the same help; moving Anita's students from their physical classroom and giving the classroom to a white teacher; moving Anita's students instead to an auditorium where it was nearly impossible for her and them to succeed; overloading Anita's student count, but allowing at least one white teacher to have as little as two students per class period; enforcing impossible to meet standards about IEPs on Anita, but being significantly more lax on white teachers; micromanaging her but not white teachers; sending her harassing emails; and interfering with her students' schedules that set her up for failure.

71. Anita reasonably perceived her working environment at Defendant to be hostile and a reasonable woman in her circumstances would find such working environment to be abusive or hostile.

72. As a direct and proximate result of the conduct by Defendant, Anita is entitled to compensatory damages including for pain, PTSD, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, and nightmares. She is reasonably likely to incur more compensatory damages in the future.

73. Injunctive relief should be granted for Anita against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to its duties and liabilities under 42 USC § 2000(e)-2(a)(1).

74. The unlawful employment practices complained of were intentional.

75. Anita seeks a judgment for the following:

    A. Compensatory and general damages in an amount to be determined by the trier-of-fact;

    B. Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

    C. Front pay in lieu of reinstatement;

    D. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Anita;

    E. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

    F. Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 USC § 1920.

**Count IV**

**Retaliation for Complaining About Age Discrimination**
**ADEA, 42 U.S.C. § 623(d)**

76. Anita repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

77. The Age Discrimination in Employment Act (ADEA) prohibits discriminatory retaliation based on age.

78. When Anita complained of race discrimination, the District discriminatorily retaliated against her, due to her age, when it conducted a sham investigation into her complaints and subjected her to unjustified negative treatment, including: switching her grade levels to set her up for failure, falsely accusing her not following IEP steps in meetings, denying her an opportunity to teach summer school while other teachers were allowed to teach it, punishing her for not following steps in a Letter of Reprimand that she was never given, issuing her a second Letter of Reprimand with false accusations, issuing her an unjustified "ineffective" performance evaluation, and allowing other teachers significant leniency in behavioral issues.

79. Defendant's unlawful employment practices were willful within the meaning of the ADEA, 29 USC § 623(d).

80. Anita seeks a judgment for the following:

81. Compensatory and general damages in an amount to be determined by the trier-of-fact;

   A. Compensatory and general damages in an amount to be determined by the trier-of-fact;

   B. Injunctive relief, including enjoining discrimination and implementing policy changes, training, and changing her status to eligible for rehire;

   C. Reinstatement with all accommodations;

D. Back pay, reinstatement with all accommodations in lieu of front pay, or front pay with interest;

E. Liquidated damages;

F. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

G. Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 USC § 1920.

## Count V
### Retaliation for Complaining About Race Discrimination
### 42 USC § 2000e-3(a)

82. Anita re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

83. When Anita complained of race discrimination, the District discriminatorily retaliated against her, due to her race, when it conducted a sham investigation into her complaints and subjected her to unjustified negative treatment, including: switching her grade levels to set her up for failure, falsely accusing her not following IEP steps in meetings, denying her an opportunity to teach summer school while other teachers were allowed to teach it, punishing her for not following steps in a Letter of Reprimand that she was never given, issuing her a second Letter of Reprimand with false accusations, issuing her an unjustified "ineffective" performance evaluation, and allowing other teachers significant leniency in behavioral issues.

84. Anita reasonably perceived her working environment at Defendant to be hostile and a reasonable woman in her circumstances would find such working environment to be abusive or hostile.

85. As a direct and proximate result of the conduct by Defendant, Anita is entitled to compensatory damages including for pain, PTSD, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, and nightmares. She is reasonably likely to incur more compensatory damages in the future.

86. Injunctive relief should be granted for Anita against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to its duties and liabilities under 42 USC § 2000(e)-2(1).

87. The unlawful employment practices complained of were intentional.

88. Anita seeks a judgment for the following:

    A. Compensatory and general damages in an amount to be determined by the trier-of-fact;

    B. Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

    C. Reinstatement with all accommodations;

    D. Front pay in lieu of reinstatement with all accommodations;

    E. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Anita;

    F. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

    G. Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 USC § 1920.

WHEREFORE, Anita prays for the following relief:

1.  For a declaration that Defendant violated her rights under Title VII, the ADA, and the ADEA,

2.  All relief available under the statutes asserted in this case.

3.  For injunctive relief, including a permanent injunction prohibiting Defendant from engaging in discrimination under Title VII, the ADA and the ADEA.

4.  For injunctive relief, including a permanent injunction prohibiting Issa from engaging in discrimination under Title VII, the ADA and the ADEA.

5.  Compensatory damages.

6.  For lost wages.

7.  Reinstatement with all accommodations.

8.  For reinstatement with all accommodations or front pay in lieu of reinstatement with all accommodations.

9.  For liquidated damages.

10. For compensation for past and future non-pecuniary losses (including medical expenses) resulting from the unlawful practices under Title VII, the ADA, and the ADEA.

11. For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full.

12. For reasonable attorneys' fees.

13. Taxable costs.

14. All other relief the court shall deem is just.

DATED this 7th day of June 2022.

Anita Harris-Smith